UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RSS WFCM2020-C55 – MI
RHM, LLC,

                                                    Case No. 4:21-cv-11345
          Plaintiff,                                District Judge Shalina D. Kumar
                                                    Magistrate Judge Anthony P. Patti
v.

RKJ HOTEL MANAGEMENT,
LLC and JEFF KATOFSKY,

          Defendants.
_____/

## REPORT AND RECOMMENDATION TO DENY DEFENDANT KATOFSKY'S MOTION TO DISMISS (ECF No. 10)

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Defendant Katofsky's motion to

dismiss (ECF No. 10).

**II.    REPORT**

   **A.    Background**

   This lawsuit concerns a loan made to RKJ Hotel Management "related to

and secured by real property and a hotel located in Romulus, Michigan."  (ECF

No. 1, PageID.7 ¶ 7.)  Lender RSS WFCM2020-C55 - MI RHM, LLC ("RSS")

seeks damages against borrower RKJ Hotel Management, judicial foreclosure of

the subject property, judicial foreclosure of other collateral, the appointment of a

receiver over the subject property, and damages against guarantor Jeff Katofsky. (ECF No. 1, PageID.8 ¶ 9.)

RSS initiated this lawsuit in a Michigan state court. *See* Case No. 20-016230-CB (Wayne County Circuit Court). On June 8, 2021, Katofsky, who is a licensed member of the State Bar of California and who appears *in pro per*, removed the case to this Court on the basis of diversity jurisdiction. (*Id*., PageID.1-3.) Importantly, Defendant Katofsky's notice of removal not only states that "[r]emoval to the Eastern District of Michigan is proper *because this District includes Wayne County, Michigan*[,]" but also sets forth several "reservation of rights," including a request that "this Court assume jurisdiction over *this matter* and grant Defendant Katofsky such other and further relief as this Court deems just and proper." (*Id*., PageID.2-3 ¶¶ 5 (emphasis added), 16 (emphasis added).) *See also* 28 U.S.C. § 1441. In other words, he asserts that this Court has subject matter jurisdiction based on diversity and that this is the proper venue for transfer of a case from Wayne County, but he does not necessarily agree that any court within this venue has personal jurisdiction over him, which he has reserved the right to challenge.[1]

## B.    Pending Matter

---

[1] On July 7, 2021, Judge Berg referred this case to me for all pretrial matters (ECF No. 17); however, on February 15, 2022, the case was reassigned to Judge Kumar pursuant to Administrative Order 22-AO-004.

Currently before the Court is Defendant Katofsky's motion to dismiss (ECF No. 10), wherein he challenges this Court's exercise of personal jurisdiction and the propriety of venue. (ECF No. 10, PageID.356, 361-366.) Plaintiff RSS has filed a response (ECF No. 16), and Defendant Katofsky has filed a reply (ECF No. 19).

On August 25, 2021, I conducted a hearing via Zoom technology (owing to the COVID-19 pandemic), at which Plaintiff's counsel and Defendant Katofsky appeared. The Court entertained oral argument and took the motion to dismiss under advisement.

## C.   Discussion

### 1.   RKJ Hotel Management, a Nevada limited liability company, has conducted business in Michigan.

RKJ Hotel Management filed its articles of organization with the Nevada Secretary of State on May 30, 2013, although its organization chart suggests it was formed on June 19, 2013. (ECF No. 1, PageID.216, 129.) On October 15, 2015, RKJ Hotel Management – deemed a "Nevada foreign limited liability company" – was authorized "to transact business in Michigan[.]" (ECF No. 1, PageID.269; *see also id.*, PageID.265.) On October 31, 2016, RKJ Hotel Management executed a "Restated Operating Agreement." (ECF No. 1, PageID.217-259.)

Thereafter, on March 22, 2018, it seems that Marriott International, Inc. ("Franchisor") and RKJ Hotel Management ("Franchisee") entered into a franchise

3

or license agreement to operate a Delta Hotels by Marriott at 31500 Wick Road, Romulus, MI 48174.  (ECF No. 1, PageID.8 ¶ 12, 39, 289-290, 293-294.)  On December 23, 2019, Nevada's Secretary of State issued a certificate of existence with status in good standing.  (*Id*., PageID.265.)  At least as of January 2020, the members of RKJ Hotel Management seem to have included:  (a) the Katofsky Family Trust; (b) WOFM Inc.; (c) Alexis Ariella, L.L.C.; (d) Weisman Holdings, L.L.C.; (e) SRG, L.L.C.; and, (f) Samra, L.L.C.  (ECF No. 1, PageID.129, 256-259, 263-264, 267-268.)

### 2.  The January 2020 loan documents with "original lender" Rialto Mortgage Finance have allegedly been reassigned to RSS.

On January 14, 2020, RKJ Hotel Management entered into a loan agreement with Rialto Mortgage Finance, LLC., *i.e.*, the "original lender."  (ECF No. 1, PageID.21-172; *id*., PageID.8 ¶ 10.)  This agreement refers to "certain Delta Hotels by Marriott Franchise Agreement dated March 22, 2018, by and between Franchisor and Borrower . . . [,]" and "any replacement franchise agreement . . . ."  (ECF No. 1, PageID.39.)  On the same date:  (a) borrower RKJ Hotel Management executed a $20,500,000.00 promissory note with lender Rialto Mortgage Finance, LLC (ECF No. 1, PageID.174-177); (b) borrower RKJ Hotel Management executed a mortgage with lender Rialto Mortgage Finance, LLC (ECF No. 1,

PageID.179-201); and, (c) Katofsky, as an individual, signed a "Guaranty of Recourse Obligations" (ECF No. 1, PageID.203-211).[2]

According to RSS, "Pursuant to certain assignments, the Loan Documents were assigned to and are held by Plaintiff." (*Id.*, PageID.9 ¶ 15.)

### 3. RKJ Hotel Management, which allegedly defaulted in Fall 2020, filed a voluntary bankruptcy petition in early 2021.

The hotel appears to have been temporarily shuttered for an "initial closed period" from August 2020 to November 21, 2020, seemingly due to RKJ Hotel Management's desire "[t]o address the impact of COVID-19 on the business of the Hotel including the impact of cancellations, cancelled flights, reduced occupancy and governments taking action to contain the outbreak[.]" (ECF No. 1, PageID.8 ¶ 12, 10 ¶ 18, 289-290, 293-294.) Meanwhile, via letters dated August 7, 2020 and September 16, 2020, counsel for Rialto Capital Advisors, LLC ("Special Servicer") provided "Notice of Event of Default and Reservation of Rights." (ECF No. 1, PageID.9 ¶¶ 16-17; *id.*, PageID.271-274, 284-288.)

---

[2] (*See also* ECF No. 10, PageID.372-380.) Also on January 14, 2020, RJK Hotel Management appears to have executed a "Borrower's Certification" via a single signature (ECF No. 1, PageID.212-214) and the RKJ Hotel Management members signed an "Amendment to the Restated Operating Agreement for RKJ Hotel Management, LLC," (ECF No. 1, PageID.260-264). Just a few days later, on January 18, 2020, RKJ Hotel Management members signed a resolution regarding financing. (ECF No. 1, PageID.266-268.)

On February 5, 2021, the Wayne County Circuit Court "entered an Order Appointing Receiver, pursuant to which DMMI Associates LLC was appointed as the receiver for the Hotel and Property." (ECF No. 1, PageID.10 ¶ 20.) *See also* Case No. 20-016230-CB (Wayne County Circuit Court). Then, on February 9, 2021, RKJ Hotel Management filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. *See* Case No. 21-10593-NMC (D. Nev.). (ECF No. 1, PageID.10 ¶ 21.)

On March 19, 2021, the Wayne County Circuit Court filed an order for stay of proceedings. Just a few days thereafter, on March 22, 2021, RSS filed an amended complaint.[3] RSS contends that "[t]he total unpaid principal balance of the Loan is $20,472,280.67[.]" (ECF No. 1, PageID.10 ¶ 19, 11 ¶ 31, 12 ¶ 37, 17 ¶ 66.) With reference to Section 1.1(a) of the Guaranty (ECF No. 1, PageID.203) and Section 8.6 of the Loan Agreement (ECF No. 1, PageID.107-110), RSS claims "The Bankruptcy Action triggers *full recourse liability* of Guarantor . . . [,]" as does certain other allegedly "unpermitted Indebtedness." (ECF No. 1, PageID.10 ¶¶ 22-24 (emphasis added).) Moreover, with reference to the same sections of the Guaranty and Loan Agreement, RSS also claims that "The manner in which the Bankruptcy Action was filed" – *i.e.*, allegedly "without the unanimous consent of

---

[3] During the August 25, 2021 hearing, Defendant Katofsky suggested the amended complaint added him as a new party.

6

the Board of WOFM, Inc., the manager of Borrower" RKJ Hotel Management –

"violates the special purpose entity provisions of the Loan Documents, and

Guarantor is liable for any Losses arising from such conduct . . . ."  (ECF No. 1,

PageID.10-11 ¶¶ 25-26.)

> ### 4.   RSS's claims against RKJ Hotel Management (Counts I-IV) are stayed due to the pending bankruptcy case.

Although RSS's complaint sets forth five causes of action, the pleading also

acknowledges the first four counts – *i.e.*, those between RSS and RKJ Hotel

Management – "are stayed due to the pendency of the Bankruptcy Action."  (*Id.*, ¶

27.)  It appears the bankruptcy case is still pending, because Judge Natalie M. Cox

is scheduled to conduct hearings:  (a) on March 15, 2022 regarding RKJ Hotel

Management's motion for approval of procedures and its disclosure statement to

Accompany Debtor's Amended Plan of Reorganization; and, (b) on March 29,

2022 regarding applications for compensation.  *See* Case No. 21-10593-NMC (D.

Nev.) (ECF Nos. 193, 232, 370, 371, 374, 377).

Accordingly, this report concerns only Count V – RSS's claim for breach of

contract against guarantor Katofsky.  (ECF No. 1, PageID.16-17 ¶¶ 58-67.)  RSS

claims, with respect to the January 14, 2020 "Guaranty of Recourse Obligations"

(ECF No. 1, PageID.203-211), that guarantor Katofsky "is in default and material

breach" for failure "to fulfill its obligations under the Guaranty."  (ECF No. 1,

PageID.16 ¶¶ 61-62.)  As a result of the Bankruptcy Action and the alleged

"unpermitted Indebtedness," RSS claims Katofsky "is liable under the Guaranty for the full amount due and owing of the Loan." (*Id*., PageID.16 ¶¶ 63-64.) Also, "[a]s a result of filing the Bankruptcy Action in violation of the special entity provisions of the Loan Documents," RSS claims that Katofsky "is liable under the Guaranty for all Losses arising out of such conduct." (*Id*., PageID.16 ¶ 65.) In addition to the alleged total unpaid principal balance of the Loan, RSS claims it is "entitled to its attorneys' fees, costs and expenses incurred to collect the outstanding debt and prosecute this action pursuant to the terms of the Loan Documents." (*Id*., PageID.17 ¶¶ 66-67.)

### 5. Katofsky calls into question whether an event triggering "full recourse liability" has occurred.

At this point, it is helpful to consider the interplay between Section 1.1(a) of the Guaranty and Section 8.6 of the Loan Agreement. Section 1.1(a) of the Guaranty defines the term "Guaranteed Obligations" as "all obligations and liabilities of Borrower for which Borrower shall be personally liable pursuant to Section 8.6 of the Loan Agreement, and none other." (*Id*., PageID.203.) During the August 25, 2021 hearing, Katofsky parsed Section 8.6 of the Loan Agreement – which concerns "exculpation" – as having two parts, namely: (a) the "bad boy carve-out" section, which does not include bankruptcy (ECF No. 1, PageID.107-109 ¶¶ (i)-(xvi)); and, (b) the "we have to look at it" section, which includes the

filing of "a voluntary petition under the Bankruptcy Law" (*id*., PageID.109-110 ¶¶ 1-11).

Katofsky advocated that the filing of bankruptcy does not convert or trigger the non-recourse debt/liability to recourse debt/liability and alleged that the Nevada bankruptcy court is considering whether there was even a default of the loan (*i.e.*, if RKJ Hotel Management did not default on the loan, then, Katofsky alleges, he is not in default of the Guaranty).  Thus, if the Court denies Defendant Katofsky's personal jurisdiction challenge set forth in his motion to dismiss and requires Defendant Katofsky to file an answer, it is clear Katofsky will dispute RSS's allegation that the Bankruptcy Action "triggers full recourse liability . . . under Section 1.1(a) of the Guaranty and Section 8.6 of the Loan Agreement." (ECF No. 1, PageID.10 ¶ 22.)  Relatedly, as the Court recognized when granting Defendant Katofsky's motion to be relieved of default, Defendant Katofsky has *articulated* a meritorious defense, even if RSS contests it.

> **6.    Venue is proper in this Court, and the forum selection clause is permissive.**

RSS claimed that venue was proper in Wayne County Circuit Court, "pursuant to MCL 600.1621 and MCL 600.1605 . . . [,]" because "this matter involves *real property located in Wayne County* and *Defendants conduct business in Wayne County*."  (ECF No. 1, PageID.7 ¶ 6 (emphases added).)  Having already removed the case to this Court, Defendant Katofsky argues that the Eastern District

of Michigan is not "a proper venue to litigate this Breach of Contract action that arises out of a Guaranty which explicitly contains a forum selection clause setting forth that this action is under the *exclusive* jurisdiction of the State of New York[.]" (ECF No. 10, PageID.356, 363-366 (emphasis added).)

Each of RSS's three venue-related responsive arguments is persuasive.

### a.    Propriety of venue

Defendant Katofsky brings his motion, in part, under Fed. R. Civ. P. 12(b)(3).  (ECF No. 10, PageID.353, 360, 361, 363, 366, 369.)  However, RSS properly notes that Fed. R. Civ. P. 12(b)(3), which is based on "improper venue," is not "the appropriate vehicle for a party seeking dismissal of a complaint based on the parties' contractual consent to litigate in an alternative forum."  (*Id*., PageID.458-459.)  *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013) ("Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper.'  Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause.").[4]  "This question—whether venue is 'wrong' or

---

[4] *See also* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the *wrong division or district* shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.") (emphasis added).

'improper'—is generally governed by 28 U.S.C. § 1391 . . . ." *Atl. Marine Const.*
*Co.*, 571 U.S. at 55 (external footnote omitted).  Yet, Defendant Katofsky's
"improper venue" argument is a misnomer.  (ECF No. 10, PageID.363.)  Rather
than argue that venue is *improper* under 28 U.S.C. § 1391(b) and can be dismissed
or transferred in accordance with 28 U.S.C. § 1406(a), Defendant Katofsky's
citation of these statutes is merely introductory.  (ECF No. 10, PageID.360-361.)

### b.      The permissive forum selection clause

Defendant Katofsky seeks "enforcement of the clause" through a motion to
dismiss for "failure to state a claim upon which relief can be granted[.]"  Fed. R.
Civ. P. 12(b)(6).  (ECF No. 10, PageID.353, 360, 361, 363, 366, 369.)  *See Langley*
*v. Prudential Mortg. Cap. Co.*, LLC, 546 F.3d 365, 369 (6th Cir. 2008)
(considering a Fed. R. Civ. P. 12(b)(6) motion as a method of enforcement of a
forum selection clause).  He describes Section 4.9 as a forum selection clause that
dictates the State of New York's "exclusive jurisdiction" over any dispute or action
arising out of the Guaranty.  (ECF No. 10, PageID.356, 359, 363, 364.)  RSS
disagrees, pointing out that "the venue provision in the guaranty is not an
'exclusive' forum selection clause[,]" rather, it is "permissive."  (*Id*., PageID.460-
461.)

The reality is that Section 4.9 contains two different clauses, which achieve
different purposes.  Subsection 4.9(a) is a <u>choice-of-law clause</u>, while subsection

(b) is a permissive and unilateral, rather than a mandatory and bilateral, <u>forum selection clause</u>.  Subsection 4.9(a) reads:

> **THIS GUARANTY WAS NEGOTIATED IN THE STATE OF NEW YORK, AND MADE BY GUARANTOR AND ACCEPTED BY LENDER IN THE STATE OF NEW YORK, AND THE PROCEEDS OF THE LOAN ARE DEEMED TO HAVE BEEN DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS GUARANTY AND THE OBLIGATIONS ARISING HEREUNDER *SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK* APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS) AND *ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA.* TO THE FULLEST EXTENT PERMITTED BY LAW, GUARANTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS GUARANTY AND THE OTHER LOAN DOCUMENTS, AND THIS GUARANTY AND THE OTHER LOAN DOCUMENTS *SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK* PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.**

(ECF No. 1, PageID.209 (emphases added).)  Defendant Katofsky attests that the Guaranty "explicitly provides that the Guaranty shall be wholly governed by the laws of New York and that this action should have initiated in the State of New York."  (ECF No. 10, PageID.370 ¶ 8.)  Yet, even Defendant Katofsky

12

acknowledges that the Guaranty at issue in this lawsuit contains "forum selection <u>and</u> choice-of-law clauses . . . [,]" (ECF No. 10, PageID.366 (emphasis added)). Choice of law clauses and forum selection clauses are not the same thing.  *See Bominflot, Inc. v. M/V Henrich S*, 465 F.3d 144, 149 (4th Cir. 2006) ("This non-lien-specific provision, however, is plainly a *forum selection* clause rather than a *choice of law* clause.") (emphases in original, external footnote omitted).  And, during the hearing, Defendant Katofsky admitted, correctly, that federal courts may apply the laws of other jurisdictions.  *See* BLACK'S LAW DICTIONARY (11th ed. 2019) (a choice-of-law clause is "[a] contractual provision by which parties designate the jurisdiction *whose law will govern* any disputes that may arise between the parties[,]" while a forum-selection clause is "[a] contractual provision in which the parties establish *the place* (such as the country, state, or type of court) for specified litigation between them.") (emphases added).  Put another way, even if the "[c]onstruction, validity, and performance of the Guaranty *shall* be strictly governed by the laws of the State of New York[,]" due process does not necessarily require that "this action be dismissed and re-initiated in New York." (ECF No. 19, PageID.486 ¶ D; *see also* ECF No. 10, PageID.370 ¶ 8 (emphasis added).)  Subsection 4.9(a) says nothing about where suit must or may be filed, only that New York "has a substantial relationship to the parties" and that its

substantive law shall "govern" the Guaranty and obligations arising thereunder, which shall be "construed in accordance with" that body of law.

Defendant Katofsky's venue argument is most appropriately addressed by examining the nature of the Guaranty's forum selection clause, *i.e.*, whether Section 4.9(b) is mandatory or exclusive, as Katofsky argues, or permissive, as RSS argues.  That clause expressly provides:

> ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER [RSS] OR GUARANTOR [Katofsky] ARISING OUT OF OR RELATING TO THIS GUARANTY OR THE OTHER LOAN DOCUMENTS MAY AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, PURSUANT TO SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW AND GUARANTOR WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND GUARANTOR HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING[.]

(ECF No. 1, PageID.209 [Section 4.9(b)] (emphases added).)[5]  Katofsky argues that this is "an unambiguous and exclusive forum selection clause that requires the parties to litigate their disputes in New York[,]" that "Plaintiff [RSS] cannot establish that the forum selection clause is unenforceable[,]" and that "Public

---

[5] Indeed, there are similar governing law and venue provisions within the other key documents, *i.e.*, the Loan Agreement, the Promissory Note, and the Mortgage. (*See* ECF No. 1, PageID.111-112, 175-176, 193-194.)

policy in Michigan favors enforcement of forum selection clauses[.]"  (ECF No.

10, PageID.363-366.)

However, RSS stands on more solid ground.  First, Section 4.9(b)'s express

language – a lawsuit "*may* at [RSS's] *option* be instituted in any federal or state

court in the City of New York, County of New York . . ." (ECF No. 1, PageID.209

(emphasis added)) – is permissive, and everything that follows "may" is an option,

unilateral to the lender.  Second, notwithstanding the acknowledgements made in

subsection 4.9(a) and as discussed at the hearing, the inclusion of Section 4.9(b) in

the Guaranty makes sense here, where Defendant Katofsky is located in California,

and lender RSS may not otherwise have been able to sue him as the Guarantor in

New York based on the absence of minimum contacts.  Third, the Court should

decline Defendant Katofsky's invitation at the hearing to look at Section 4.9(a) and

Section 4.9(b) *together*.  Unlike Section 4.9(a)'s choice-of-law clause, Section

4.9(b)'s language does not include the imperative "shall."  Indeed, during oral

argument, Katofsky admitted the word "must" is not used.  Nor does Section 4.9(b)

contain language of exclusion, *e.g.*, "except for . . . ."  Put another way, "[t]he

forum clause in the [Guaranty] does not *require* that the parties bring their lawsuits

in [New York]; it only permits that they may do so."  *679637 Ontario Ltd. v.*

*Alpine Sign & Printer Supply, Inc.*, 218 F. Supp. 3d 572, 577 (E.D. Mich. 2016)

(Lawson, J.) ("In the sales agreement, the parties agreed that any 'Michigan

District or Circuit Court with venue in Ingham County, Michigan' is a proper venue for lawsuits 'arising out of this Contract.'  But they did *not* agree that an Ingham County court is the *only* court that could resolve their disputes.").  If the parties had intended to require or insist that all litigation be pursued in New York's federal or state courts, nothing prevented them from explicitly stating so.

In sum, "the permissive forum selection clause [Section 4.9(b)] in the Guaranty does not warrant dismissal or transfer of this case[,]" (*id*., PageID.461), and it belies Katofsky's assertions that "New York is the exclusive forum for litigation" under the Guaranty's forum selection clause, or that the Guaranty's forum selection clause "mandates that this case be litigated in one forum – New York," or that "this action must be litigated and tried in New York."  (ECF No. 19, PageID.486-487.)

### c.      Transfer of venue

Defendant Katofsky also seeks transfer of venue pursuant to 28 U.S.C. § 1404(a).  (ECF No. 10, PageID.357, 361, 366.)  This statute provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a) (emphases added).  *See Langley*, 546 F.3d at 369 (considering "a

16

motion to transfer venue under 28 U.S.C. § 1404(a)" as a method of enforcement of a forum selection clause).

Yet, RSS correctly notes that Katofsky "has not established that this District is an inconvenient forum so that dismissal or transfer of venue under *forum non conveniens* (codified in 28 U.S.C. § 1404(a)) is warranted."  (ECF No. 16, PageID.459-460.)  RSS chose to initiate this matter in Michigan when it filed the lawsuit in Wayne County Circuit Court, even though the forum selection clause provided the *option* for lender RSS to institute a related "legal suit, action or proceeding" in "any federal or state court in the City of New York, County of New York," (ECF No. 1, PageID.209 [Section 4.9(b)]).  Defendant Katofsky does not seem to argue that Michigan is an inconvenient forum; rather, he contends that, "the parties expressly agreed that New York was the only proper forum to initiate and litigate this action which directly arises out of the Guaranty."  (ECF No. 10, PageID.366.)   As explained above, this characterization of Section 4.9(b)'s language is incorrect.

### 7.    Personal jurisdiction

A party may move to dismiss for "lack of personal jurisdiction."  Fed. R. Civ. P. 12(b)(2).  Katofsky argues that this Court cannot "consistent with Due Process, exercise <u>general</u> or <u>specific</u> personal jurisdiction over Katofsky when

Katofsky lacks sufficient minimum contacts" with the State of Michigan.  (ECF

No. 10, PageID.356, 361-363 (emphases added).)

### a.    General Jurisdiction

RSS contends that this Court "has general jurisdiction over Katofsky by

consent."  (ECF No. 16, PageID.448-450.)  Katofsky argues that he "has in no way

consented to personal jurisdiction.  (ECF No. 19, PageID.485 ¶¶ A, B.)

As to general jurisdiction, Katofsky has the better argument.  Perhaps only

because RSS filed this lawsuit in Wayne County Circuit Court, Katofsky's June 8,

2021 notice of removal states, "*this Court* has *diversity jurisdiction* over this action

pursuant to 28 U.S.C. §1332(a)."  (ECF No. 1, PageID.1 (emphases added).)  The

notice explains that the removal is "based on traditional diversity jurisdiction,"

represents that Katofsky "is not, and was not at any relevant time, a citizen of the

State of Michigan[,]" and represents that "RKJ submits to and does not object to

this removal."  (*Id.*, PageID.2-3 ¶¶ 7-12.)  "Diversity jurisdiction is a subset of

subject-matter jurisdiction[.]"  *Trend Servs. v. First Mercury Ins. Co.*, No. 6:17-

CV-01511, 2018 WL 5314844, at *3 (W.D. La. Jan. 5, 2018).  Defendant

Katofsky's assertion of diversity jurisdiction is not an admission of or

acquiescence in *personal jurisdiction*.  Moreover, the notice of removal's

"reservation of rights" contains the following statement:  "Katofsky respectfully

requests that this Court assume *jurisdiction* over *this matter* and grant Defendant

Katofsky such other and further relief as this Court deems just and proper." (ECF No. 1, PageID.3 ¶ 16 (emphases added).) RSS's counsel admitted at oral argument that RSS had not found a case stating that *mere* removal of a lawsuit under 28 U.S.C. §§ 1441 and 1446 constitutes a submission to or an admission of personal jurisdiction. Indeed, the system is designed so that anyone who believes he or she has been wrongfully haled into state court in a foreign jurisdiction in a diversity case has the ability to remove it and present a defense in federal court, even to determine whether personal jurisdiction was proper in the first instance. As this Court has previously acknowledged, "'The purpose of removal legislation is to give a non-resident defendant who has been unwillingly brought into a State court, the right to remove to the presumably unprejudiced forum of the Federal court.'" *Smith v. Fed. Express Corp*., No. 10-11956, 2010 WL 3634347, at *1 (E.D. Mich. Sep. 14, 2010) (Duggan, J.) (*quoting Browne v. Hartford Fire Ins. Co*., 168 F. Supp. 796, 797 (D.C. Ill. 1959)). Here, Defendant Katofsky sought the "presumptively unprejudiced forum" of this federal district court for the initial purpose of determining personal jurisdiction, and, if necessary, the merits.

In sum, the "unmodified" jurisdiction to which Katofsky has consented does not constitute a submission to *personal* jurisdiction; rather, it is a submission to *subject matter* jurisdiction, because it requests that this Court assume jurisdiction over *this matter*[,]" *i.e.*, not "him," and the request for "such other and further

relief" would include the instant request for dismissal for lack of personal jurisdiction.

### b.      Specific Jurisdiction

Defendant Katofsky argues he "does not have sufficient minimum contacts with the State of Michigan . . . [,]" and "never *purposely* availed himself of the privilege of acting in Michigan[.]"  (ECF No. 10, PageID.353, 356; ECF No. 19, PageID.485-486 ¶ C, 487-488 (emphasis added).)  RSS contends that RSS contends that this Court "has specific jurisdiction over Katofsky because he signed the Guaranty."  (ECF No. 16, PageID.450-457.)

### i.      Three-part test for long-arm jurisdiction

"Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-473 (1985) (footnotes, quotations and citations omitted).  "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State."  *Burger King Corp.*, 471 U.S. at 474 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).  "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a

result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person.  Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Burger King Corp.*, 471 U.S. at 475 (internal and external quotations, citations, and footnoted omitted) (emphasis in original). "Thus where the defendant deliberately has engaged in significant activities within a State or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp.*, 471 U.S. at 475-476 (internal quotations and citations omitted).  Moreover the Michigan long-arm statute "allows a court to assert personal jurisdiction over a defendant who, among other things, transacts 'any business within' Michigan.  MICH. COMP. LAWS § 600.715(1).  The provision is interpreted broadly, and it includes even the 'slightest' business contact." *Weather Underground, Inc. v. Navigation Catalyst Sys.*, 688 F. Supp.2d 693, 697 (2009) (*quoting Sifers v. Horen*, 188 N.W.2d 623, 624 n.2 (Mich. 1971)).

Consideration of the purposeful availment element alone suffices here. Defendant Katofky's argument that this Court lacks specific jurisdiction over him

21

is based on his alleged "non-existent" *personal* connection with Michigan and the assertion that he "has only conducted business under the purview of companies to which he has a shareholder or membership interest[.]" (*Id.*, PageID.362-363.) In other words, he is not challenging whether "the litigation results from alleged injuries that 'arise out of or relate to' those activities[,]" *Burger King Corp.*, 471 U.S. at 472-473, nor is he contending that it is "unreasonable to require him to submit to the burdens of litigation" in this Court. *Burger King Corp.*, 471 U.S. at 476. Therefore, the Court need not consider these elements of the three-part test. *Citizens Bank v. Parnes*, 376 F. App'x 496, 502 (6th Cir. 2010) (setting forth three-part test for determining whether long-arm jurisdiction over an out-of-state defendant comports with due process). *See also S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968) ("three criteria emerge for determining the present outer limits of in personam jurisdiction based on a single act."); *Nat'l Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1137 (6th Cir. 1982) (quoting *S. Mach. Co.* for "determining jurisdiction when only one act is involved[.]").

### ii.    Purposeful availment

On the issue of specific jurisdiction, RSS has the better argument. Preliminarily, to the extent Defendant Katofsky relies upon the "fiduciary-shield doctrine," which is "[t]he principle that a *corporate* officer's act cannot be the basis for jurisdiction over the officer in an individual capacity[,]" BLACK'S LAW

DICTIONARY (11th ed. 2019) (emphasis added), it is not clear that the doctrine applies to limited liability companies.  Even if it did, Plaintiff RSS points to several cases in support of its argument that "[t]he 'fiduciary shield' doctrine, which Katofsky advocates, does not apply in Michigan state or federal court." (ECF No. 16, PageID.453-454.)  *See, e.g.*, *W.H. Froh, Inc. v. Domanski*, 252 Mich. App. 220, 238, 651 N.W.2d 470, 482 (2002) ("we explicitly hold that the fiduciary shield doctrine does not constitute a valid argument against a Michigan court's exercise of personal jurisdiction over a nonresident individual defendant who otherwise falls within the scope of Michigan's long-arm statute."); *Abdrabboh v. Cap. One Bank*, No. 06-11762, 2006 WL 3004084, at *7 (E.D. Mich. Oct. 20, 2006) (Roberts, J.) ("To the extent the fiduciary shield doctrine applies outside of the corporate context, state and federal courts in Michigan have explicitly rejected it.  . . . Absent an endorsement of the doctrine by Michigan state courts, federal district courts decline to apply it as well.").  Notwithstanding the Sixth Circuit cases Katofsky cites in his reply (ECF No. 19, PageID.487), at oral argument he could not cite a single case where Michigan adopted the doctrine.

More importantly, RSS convincingly contends that "Katofsky purposefully availed himself of the privilege of conducting business in Michigan."  (ECF No. 16, PageID.454.)  To be sure, Defendant Katofsky's June 17, 2021 declaration explains his contacts with Michigan as follows:  (a) "[a]t no time have I resided in

the State of Michigan or have an alternative home there[;]" (b) "I have never

personally done business in the State of Michigan and any business performed by

me were under the purview of companies to which I hold shareholder or

membership interest, such as RKJ Hotel Management, LLC.[;]" (c) "[a]t no time

have I engaged in any personal activities in the State of Michigan, or purposely

availed myself of the privilege of acting in Michigan[;]" and, (d) "[a]t no time did I

consent to this action being brought in the State of Michigan."  (ECF No. 10,

PageID.369-370 ¶¶ 5-7, 9.)  Referencing his declaration, Defendant Katofsky

claims his "personal connection with the State of Michigan is non-existent[,]" and

he "has only conducted business under the purview of companies to which he has a

shareholder or membership interest[.]"  (*Id.*, PageID.362-363.)

Yet, Defendant Katofsky's attempt to distinguish between personal and

business connections with the State of Michigan is unavailing.  Katofsky – as an

*individual* – signed the Guaranty of a $20,500,000.00 loan from original lender

Rialto Mortgage Finance to borrower RKJ Hotel Management with respect to the

property located at 31500 Wick Road, Romulus, Michigan 48174.  (ECF No. 1,

PageID.203-211; *see also id.*, PageID.28, 174, 179, 181, 201, 266.)  During oral

argument, he explained that he has been to Michigan for business purposes

multiple times in the capacity of a managing member of Nevada limited liability

companies – of which RKJ Hotel Management is presumably one – from early

24

2015 through the end of 2019, possibly early 2020, although he has not done so since the COVID-19 pandemic. He further explained that he is a trustee of a trust, presumably the Katofsky Family Trust (*see*, *e.g.*, ECF No. 1, PageID.129, 263), which has membership in Nevada limited liability companies that own real estate in Michigan. These trips "to conduct business" in Michigan were either for construction or for supervision of third-party employees (such as the LLC's subcontractors or vendors), which he primarily does in California. And Katofsky conceded at oral argument that the question of his minimal contacts with Michigan is a "closer" one than his argument about the contract language, which I have already rejected above. "But," he argued, "as a good lawyer, you put in your best argument and your second best argument." Unfortunately, his second best argument does not save the day.

Certainly, Defendant Katofsky, as the Guarantor of a loan on a Michigan hotel, "purposefully avail[ed] himself of the privilege of acting in [Michigan] or causing a consequence in [Michigan]." *Citizens Bank*, 376 F. App'x at 502 (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968).) As the Court of Appeals has previously stated in no uncertain terms, "Signing a personal guaranty for a [State] business in which one has an economic interest is the sort of 'conduct and connection with the [forum] State' that makes it reasonable to 'anticipate being haled into court there' when the underlying contract

is breached." *Nat'l Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1138 (6th Cir. 1982) (*citing World-Wide Volkswagen*, 444 U.S. at 297).  *See also First Sec. Bank v. McMillan*, 627 F. Supp. 305, 308–309 (W.D. Mich. 1985) ("this court clearly has *in personam* jurisdiction over defendants with regard to plaintiff's claim to recover on the Quality Tape guaranty contracts.").[6]

### D.    Conclusion

As discussed above, the Guaranty's forum selection clause is permissive, and Defendant Katofsky has not shown that venue is improper in this Court under 28 U.S.C. § 1391 or that transfer to New York is warranted under 28 U.S.C. § 1404(a).  Moreover, this Court has specific jurisdiction over Defendant Katofsky based on his personal guaranty of the financing on a Michigan hotel, if not also his regular business dealings in this state.  Therefore, it is **RECOMMENDED** that the Court **DENY** Defendant Katofsky's motion to dismiss (ECF No. 10).

## III.    PROCEDURE ON OBJECTIONS

---

[6] Additionally, Defendant Katofsky's repeated trips to Michigan for purposes of conducting business in the capacity of a managing member of Nevada limited liability companies, even apart from his guaranteeing a loan on a Michigan hotel, makes clear that he had the requisite minimum contacts, he availed himself of the laws of this state, he could reasonably have anticipated being haled into court here, and "traditional notions of fair play and substantial justice" are not offended. *Weather Underground*, 688 F. Supp.2d at 698 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must precisely recite the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

27

Dated:  February 28, 2022

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE