# Exhibit 6

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE**

RSS WFCM2020-C55 – MI RHM, LLC, a
Michigan limited liability company,

          Plaintiff,

vs.

RKJ HOTEL MANAGEMENT LLC, a
Nevada limited liability company,

          Defendant.

Case No. 20-016230-CB

Hon. Brian R. Sullivan

---

Brian M. Moore (P58584)
Jonathan Kama, Jr. (P83703)
DYKEMA GOSSETT PLLC
*Attorneys for Plaintiff*
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48304
(248) 203-0700
bmoore@dykema.com
jkama@dykema.com

Mark W. Sadecki (P57069)
SADECKI & ASSOCIATES, PLLC
*Attorneys for Defendant*
P.O. Box 310
Davisburg, Michigan 48350
(248) 328-1300
msadecki@saalaw.net

---

## <u>ORDER APPOINTING RECEIVER</u>

### <u>Recitals</u>

A.    Plaintiff RSS WFCM2020-C55 – MI RHM, LLC ("Plaintiff" or "Lender") filed its Verified Complaint seeking certain relief, including the appointment of a receiver.   On January 4, 2021, Plaintiff filed its Motion for Appointment of Receiver.

B.    Defendant RKJ HOTEL MANAGEMENT LLC ("Defendant" or "Borrower") owns certain real property and a hotel located at 31500 Wick Road, Romulus, Michigan, which is more particularly described in <u>Exhibit 1</u> (the "Real Estate").

C.      Borrower operated the hotel known as Delta Hotels By Marriott – Detroit Metro Airport ("Hotel") located on the Real Estate pursuant to a Franchise Agreement with Marriott International, Inc. ("Marriott") dated March 22, 2018 ("Franchise Agreement"), until Borrower closed the Hotel on or about August 21, 2020.

D.      On or about January 14, 2020, Rialto Mortgage Finance, LLC ("Original Lender") entered into a Loan Agreement with Borrower, wherein Original Lender loaned Borrower the original principal amount of Twenty Million Five Hundred Thousand Dollars ($20,500,000) ("Loan"), evidenced by a Promissory Note.

E.      The Loan is secured by, among other things, a Mortgage dated January 14, 2020, made by Borrower in favor of Original Lender and recorded on January 22, 2020 with the Wayne County Register of Deeds at Liber 55537, Page 530 ("Mortgage").

F.      The Loan Agreement, Promissory Note, Mortgage, and other agreements, documents and instruments concerning the Loan, as amended, restated or replaced from time to time, and as assigned, are collectively referred to as the "Loan Documents."

G.      The Loan Documents were assigned to, and are now held by, Plaintiff.

H.      Plaintiff has further been granted a security interest in all personal property, tangible or intangible, in connection with the Real Estate and Hotel, including without limitation, all collateral and personal property described in the Loan Documents.

I.      This Court reviewed Plaintiff's Motion for Appointment of Receiver ("Motion") and Defendant's response, held a hearing on January 22, 2021, and granted the Motion appointing Receiver (as defined below) for the reasons set forth on the record.

J.      The Receiver identified below has sufficient competence, qualifications, and experience to administer the receivership estate.

**IT IS HEREBY ORDERED** that, pursuant to MCL 554.1011–1040 (the "Receivership Act"), MCL 600.2926, and MCR 2.622:

1.   **Appointment of Receiver and the Receivership Property**

1.1   DMMI Associates LLC, by and through Jeffrey Kolessar ("Receiver"), whose address is 1628 JFK Boulevard, 23rd Floor, Philadelphia, PA 19103, is appointed Receiver of the Receivership Property (as defined below).  This Order is effective upon entry (the "Effective Date"), but the Receiver's duty to act is subject to its filing an acceptance of receivership within 7 days after the Effective Date.

1.2   As of the Effective Date and subject to acceptance requirements set forth in paragraph 1.1, the Receiver is authorized to take immediate possession and control of the Receivership Property and to take such other actions as the Receiver deems reasonable and appropriate to manage, preserve and secure the Receivership Property.  Defendant shall have neither possession, control or right to the Receivership Property or Income (as defined below) during the receivership.

1.3   The Receiver shall take possession of and receive any Income from all depositories, banks, brokerages, and otherwise (collectively, "Financial Institutions") belonging to or held by Defendant or arising from the operation of the Receivership Property, whether or not such funds are titled in Defendant's name.  All Financial Institutions are directed to deliver such Income to the Receiver upon request by the Receiver. All Financial Institutions are further directed to provide any prior statements, banking history or other information and documentation requested by Receiver relative to any and all such accounts. The Receiver is further authorized to open or close any such accounts.

1.4    The Receiver shall deposit all Income collected and received at one or more federally insured banking institutions or savings associations that are not party to this case and that have offices in this State.  The Receiver may use Defendant's tax identification number in connection with such accounts.  If the amounts in such account(s) exceed the federal insurance limit, Receiver may obtain a surety bond to protect such excess amounts.

1.5    Defendant and its agents shall fully cooperate with Receiver in connection with the transition of the management of the Receivership Property to Receiver, shall take all steps necessary to comply with this Order and other orders of the Court, and are enjoined from interfering with the use, management, possession, control, and liquidation of the Receivership Property by Receiver.  Defendant and its agents are further prohibited from removing any personal property or diverting any Income.

1.6    On the Effective Date, Defendant and its agents are ordered to turn over to the Receiver all of the following pertaining to the Receivership Property, in both physical and electronic form to the extent available (and have a continuing obligation to do so):

    a.    All Income
    b.    All keys.
    c.    All leases and subleases, including all amendments and renewals, and lease files.
    d.    The petty cash fund, if any.
    e.    A current aged account receivable/delinquency report.
    f.    An aged listing of all trade payables and other payables.
    g.    A list of historical operating expenses.
    h.    A list of utilities, utility accounts and utility deposits, if any.
    i.    2020 monthly financial reports and 2020 year-end operating statements.
    j.    All on-site employee payroll records and employee files and applications.
    k.    An inventory of all equipment, furniture, vehicles and supplies.
    l.    All current warranties.
    m.    All existing service contracts.
    n.    All pending bids for contractor work.
    o.    A list of, and any and all documents pertaining to, any unpaid vendor or service provider invoices or record of work performed by any such vendors, including but not limited to copies of any and all mechanics' liens.
    p.    All Policies and pending insurance claims.

4

q.     All tenant and vendor insurance certificates and loss runs.

r.     Surveys, site plans, stacking plans, specifications, floor plans, drawings, measurements, etc.

t.     Any reports and other documents or information regarding the condition of the Receivership Property, including but not limited to, any environmental assessments, physical condition reports, and information pertaining to deferred maintenance or capital improvements.

u.     Any federal employer identification number(s) associated with Defendant and its property management company or companies;

v.     Documents and information pertaining to any pending property tax appeals;

w.     Documents identifying all pending litigation (excluding this action).

x.     Documents and information pertaining to any violations of any applicable building or health and life safety codes and regulations.

y.     All documents, books, records and computer files, computer equipment, software, management files, equipment, furniture, supplies, and all passwords needed to access all software and computer files, e-mail account maintained at the on-site management office(s) (and all off-site financial records).

z.     A copy of the Franchise Agreement, any modifications thereof and any all other documentation or correspondence relating to the Franchise Agreement.

aa.    Such other records pertaining to the management of the Receivership Property as may be reasonably requested by the Receiver.

1.7     Within 14 days after the Effective Date, Defendant shall prepare and submit to the Plaintiff and the Receiver an accounting for (i) all Income received since in 2020 and (ii) all operating expenses.

1.8     The Receiver has the power to procure or maintain insurance coverage for the Property, including, but not limited to, property and casualty, general liability, liquor liability, umbrella policy, and worker's compensation insurance policies.  Defendant shall take steps to (i) add the Receiver and Plaintiff as additional named insureds; (ii) add the Receiver and Plaintiff as the loss payee; and (iii) modify (to the extent Approval has been given) all insurance policies relating to the operation and management of the Receivership Property (the "Policies"). These Policies include, without limitation, fire, extended coverage, auto coverage, property damage, liability (including both general liability and excess liability), fidelity, errors and omissions, and workers compensation. Defendant and its agents are prohibited from canceling, reducing, or modifying any and all Policies. The Receiver shall determine upon taking possession of the

5

Property whether, in the Receiver's judgment, there is sufficient insurance coverage. The Receiver is authorized in its discretion to terminate any existing policies and to procure policies of insurance as are customary for similarly situated properties and as it deems necessary. Any refund or return of an unearned premium shall be paid to Receiver and be property of receivership estate. No insurance company shall be permitted to terminate coverage or refuse coverage for the Receivership Property based upon prior unpaid premiums, claims history or because of the appointment of the Receiver pursuant to this Order.

1.9     No utility or other vendor may terminate service or the provision of goods to the Receivership Property or refuse to authorize any new account as a result of the non-payment of pre-receivership obligations without prior order of this Court. Each utility company or entity providing service to the Receivership Property shall forthwith transfer any deposits which it holds for the benefit of Defendant to the exclusive control of the Receiver and shall be prohibited from demanding that the Receiver deposit additional funds in advance to maintain or secure such service. The Receiver shall not be responsible for any utility bills accruing prior to its appointment as Receiver.

1.10    Within 28 days after the Effective Date, the Receiver shall give notice of this Order to all persons and entities that hold a recorded interest in the Receivership Property as of the Effective Date.

1.11    Because the Receivership Property is unlikely to satisfy the claims of Plaintiff, the Receiver is not required to give notice to any creditors of Defendant, and unsecured creditors are not required to submit claims against Defendant arising before the Effective Date.

2.     **Receiver's Duties and Authority**

2.1     The Receiver shall be vested with and shall discharge the powers and duties of a receiver under the Receivership Act and is authorized to take any reasonable actions that the Receiver deems necessary or appropriate to take possession of, exercise full control over, to prevent waste and to otherwise preserve, manage, maintain, secure and safeguard the Receivership Property, including but not limited to, the following authority, powers and duties:

a.   To maintain, manage, operate, secure and preserve the Receivership Property.

b.   To change any and all locks to the Receivership Property and, if appropriate, limit access to some or all of the Receivership Property.

c.   To assume control over the Receivership Property and collect/receive all Income.

d.   To prepare and maintain complete books, records, and financial reports of the Receivership Property, including, but not limited to, operating statements, income statements, balance statements, and all other statements prepared for the Receivership Property in a form acceptable to Plaintiff.

e.   To allow Plaintiff, its counsel, and appraisers, environmental consultants, and other independent third-party consultants engaged by Plaintiff access to the Receivership Property at all reasonable times to inspect the Receivership Property and all books and records, and to cooperate with Plaintiff, its counsel, appraisers, and other independent third-party consultants to evaluate the Project.

f.   To review, renew and modify all Policies, and if necessary and subject to Approval, purchase new or additional insurance.

g.   To maintain a separate account with a federally insured banking institution or savings association in the Receiver's own name from which the Receiver shall disburse all authorized payments as provided in this Order.

h.   To receive and endorse checks pertaining to the Receivership Property either in the Receiver's name or in Defendant's name.

i.   To pay all appropriate real estate taxes, personal property taxes, and any other taxes or assessments against the Receivership Property.

j.   To prepare and file any tax returns arising in connection with the Receivership Property and the operation of the Receivership Property as may be required by law. Defendant shall provide the Receiver with its federal employment identification number for the Receiver's use on a limited basis as necessary. The Receiver shall not be responsible for the preparation and filing of any tax returns for Defendant or its affiliates, (including income, personal property, commercial activity, gross receipts, sales and use, or other tax returns) other than to provide Defendant with information in the Receiver's possession that may be necessary for Defendant or its affiliates to prepare and file their returns. The Receiver and the receivership estate shall not be liable for the payment of taxes of any kind, assessments, goods or services provided to Defendant for the Receivership Property prior to the date of this Order. Notwithstanding, the Receiver is

7

authorized to pay all current and past due real estate taxes, personal property taxes, and any other taxes and assessments against the Receivership Property; provided that Receiver may pay real estate taxes, personal property taxes, and any other taxes or assessment that is past due as of the date of its appointment in its sole discretion.

k.   To determine and report to the Court and Plaintiff whether any Income previously received by Defendant has been used for purposes other than for the maintenance, management, and expenses of the Project.

l.   To operate the Hotel in a manner consistent with the terms of the Franchise Agreement.

m.   To engage contractors and trades on a competitive bid basis to maintain the Receivership Property, to complete improvements as permitted under this Order and to perform ordinary and necessary repairs, maintenance and improvements to the Receivership Property, provided, however, that Receiver shall not make any improvements, repairs and/or remediations having a cost of $10,000.00 or more without first obtaining Approval unless the expenditure is for life-threatening or other health or safety emergency.

n.   To make, enter it, enforce, modify, terminate, negotiate and enter into such contracts, agreements or leases of the Receivership Property as the Receiver may reasonably deem appropriate in connection with the operation of the Receivership Property and/or the discharge of the Receiver's duties. Receiver shall have the authority to terminate any current leases, service, vendor and other contracts and agreements as Receiver and may determine in its sole judgment is necessary with no further obligation or liability including not having to pay any termination fees under any terminated contract or agreement.

o.   To hire employees at the Hotel and pay such employees in accordance with all applicable laws, without any liability to the Receiver. p. To operate under and have authority over any current and apply for, obtain and renew as necessary all licenses, certifications and permits required for the operation of the Receivership Property.

q.   To retain, employ and pay any consultants, engineers, contractors, accountants, attorneys or other professionals reasonably deemed necessary or desirable to assist the Receiver in diligently executing the duties imposed upon the Receiver by this Order.

r.   To (a) issue demands in the name of the receivership upon the U.S. Postal Service, or any other public or private entity, to gain exclusive possession and control of such postal boxes as may have been used by Defendant and/or its agents for the receipt of rent, income, and other mail related to the Property; (b) open and review mail that appears to Receiver to pertain to the Receivership Property, whether or not directed to Defendant or any of its respective related parties or representatives; and (c) direct the U.S. Postal Service that mail to the Defendant and/or to the Receivership Property be redirected and released to Receiver.

s.   To pay any and all fees associated with any lawful license or permit required to operation the Receivership Property and to have the possession, control, authority over and the right to continue to operate under all existing permits, certifications and licenses, including any liquor license and related permit and/or approval issued

8

with respect to the Receivership Property whether or not in the name of the Defendant; provided; however, that Receiver also has the obligation to comply after the date of this Order with all applicable laws with respect to such license, including the transfer of the license and related permit into the name of the Receiver. If the issuing agency requires that Receiver or its nominee apply for a new license, permit or other document, Receiver or its nominee may continue to operate under the current permit until the new one is issued to ensure no disruption of service occurs. Defendant and its affiliates and agents shall: (i) cooperate in the transfer of the liquor licenses to the Receiver or his nominee; (ii) execute and deliver such documentation and certificates as are necessary or required to operate, transfer or cancel the liquor licenses; and (iii) not engage in any acts that would interfere with the Receiver's operation, transfer or cancellation of the liquor license.

2.2    The Receiver and the Receivership Property shall not be bound by any existing property management agreement affecting the Receivership Property. Defendant is enjoined from retaining a management firm for the Receivership Property or from otherwise interfering with the Receiver's retention of a management firm for the Receivership Property.

2.3    Defendant or its property manager shall terminate any and all employees at the Hotel and such termination shall be in compliance with any applicable federal, state or local statutes and regulations including those governing mass layoffs.   To the extent the Receiver decides to hire any of the dismissed employees, agents or other personnel with respect to the Receivership Property, neither the Receiver nor the receivership estate shall be liable for any claims of such employees, agents, or other personnel that arose prior to the date and time of the entry of this Order. Defendant or any management companies engaged by Defendant (as appropriate) will be solely and exclusively responsible for (a) any claims or liabilities that arose prior to the appointment of Receiver that are in any way related to an employee's employment with or separation from Defendant or any management companies engaged by Defendant, including any compensation, benefits, accrued vacation, payroll taxes, workers compensation insurance, severance liabilities, contractual obligations, benefit plans, and (b) liabilities existing

9

prior to Receiver's appointment related to the Worker Adjustment and Restraining Notification

Act (WARN), 29 U.S.C. § 2101, *et seq.*, and liabilities existing prior to Receiver's appointment

related to the Consolidated Omnibus Budget Reconciliation Act (COBRA), or similar state

statutes or regulations.

2.4     In carrying out the duties contained in this Order as it relates to the Receivership

Property, including the Real Estate and Hotel, the Receiver is authorized, but not required to, and

only upon Plaintiff's Approval:

   a.   To assign a property manager.
   b.   To market and sell the Receivership Property only with prior court approval.
   c.   To execute or modify lease agreements.
   d.   To institute legal actions and retain counsel for such actions as the Receiver
        deems necessary to preserve and protect the Receivership Estate.
   d.   To borrow funds for purposes relating to the operations of the Receivership
        Property.  The Receiver shall not borrow funds without first providing Plaintiff,
        by advance written notice, a reasonable opportunity to elect to advance funds
        required by the Receiver. Any request for funding to Plaintiff shall include
        supporting documentation as requested by Plaintiff.
   e.   To contest, protest, or appeal any real estate tax, personal property tax, or other
        tax or assessment pertaining to the Receivership Property. Any tax refund or
        reimbursement, whether for taxes paid by the Receiver or Defendant, and whether
        pertaining to any tax period before or after the entry of this Order, shall be
        deemed Income and delivered to the Receiver.
   f.   To prosecute and defend any claims on behalf of Defendant or the Receivership
        Property.
   g.   To conduct any environmental or property condition assessment.

2.5     Subject to Plaintiff's Approval, the Receiver has the right to enter into a new

franchise agreement with Marriott in a form and substance satisfactory to the Receiver and

Marriott, and to have the Hotel operated in accordance with the terms of such franchise

agreement by a third-party management company approved by Marriott in accordance with the

terms thereof.  The obligations of the Receiver shall be to insure that the Hotel is operated in

accordance with state, local and federal laws, and maintained in accordance with the standards

required by the franchise agreement, and that both past due payments and those that come due

under the franchise agreement during the receivership shall be promptly paid to Marriott as on-going operating expense ahead of those payments due to the Receiver and Plaintiff.  In the event there are insufficient funds from the operation of the Hotel to pay all amounts due to Marriott or its affiliates under the franchise agreement (or related thereto), Plaintiff shall fund such amounts due to Marriott.  In the event the Receiver fails to comply with the terms of the franchise agreement and cure any defaults that may be cured under the terms of the franchise agreement, Marriott shall have the absolute right to terminate the franchise agreement consistent with its terms, immediately on written notice to the Receiver.  The Receiver shall have the right to expend and disburse funds for payment to Marriott for amounts due from time to time under the franchise agreement without the approval of Plaintiff.

3.      **Plaintiff's Right to Market Its Interest**

3.1     Plaintiff retains its right to transfer, assign or sell its interest in the Loan Documents, the Real Estate, and related property during this Receivership, including following a foreclosure sale and throughout the redemption period.

3.2     The Receiver and other parties to this action shall not take any action which impedes or frustrates Plaintiff's right to transfer, assign or sell its interest.

4.      **Sale of the Receivership Property**

4.1     In accordance with MCL 554.1026, the Receiver is authorized, and the Court appoints the Receiver as Defendant's attorney-in-fact, to market and sell the Receivership Property on behalf of, and in the name of, Defendant, subject to the following conditions precedent:

a.      The Real Estate has not been sold at a foreclosure sale.
b.      The sale shall be a commercially reasonable sale to a bona fide third party purchaser as determined by the Receiver in its reasonable business judgment.
c.      The sale may be a cash sale or a sale subject to the Mortgage.

11

    d.    No sale shall be made to the Receiver, or to any person or entity with a beneficial interest in the Receiver, or to any person or entity in which the Receiver has a beneficial interest.

    e.    All real estate taxes shall be current at the time of the sale.

    f.    The other terms and conditions of sale shall be appropriate in the reasonable business judgment of the Receiver.

4.2    The Receiver and the Real Estate shall not be bound by any brokerage or listing agreement affecting the Receivership Property as of the Effective Date.

4.3    The Receiver may select and retain a real estate broker to market the Receivership Property for sale, and the broker may be an affiliate of the Receiver.  Any such broker, along with the listing agreement and amount of the commission, is subject to Plaintiff's Approval.

4.4    Any sale of Receivership Property by the Receiver shall be subject to the following further procedures: and court approval:

    a.    All proposed contracts for sale shall be subject to Plaintiff's Approval.

    b.    The sale, and contracts for sale, shall also be subject to later approval and confirmation by Order of this Court ("Confirmation Order").  The Confirmation Order may be sought by either Plaintiff or the Receiver, and shall be a final order unless (a) a timely motion for rehearing or timely appeal as of right is filed, and (b) the order is stayed within such period upon posting a bond in the amount of the purchase price and such other conditions deemed appropriate by the Court.

    d.    The closing on the sale of the Receivership Property shall take place in person or by escrow at the offices of a title company approved by the Receiver and Plaintiff. The closing statement with respect to such sale (including all closing costs, prorations, sales commissions, and any other adjustments to the purchase price) shall be subject to Plaintiff's Approval.

    e.    Within ten (10) days after closing on the sale of any of the Receivership Property, the Receiver shall file an affidavit with the Clerk of Court stating the following with respect to the property which was sold:

        i.    The property was sold for a commercially reasonable price;

        ii.    The date of sale and sale price; and

        iii.    The sale complied with the conditions of the Confirmation Order.

4.5    Subject to the foregoing subsections of this article, the Receiver has the authority to perform all acts proper or necessary to market and sell the Receivership Property, including without limitation, the authority to execute and deliver deeds, mortgage loan assumptions,

modification agreements, closing statements, and all other documents necessary to transfer the Receivership Property, all on behalf of and in the name of Defendant.

4.6     The net proceeds of the sale of the Receivership Property ("Net Proceeds") shall be the gross sales price of the Receivership Property less customary closing costs, prorations, sales commissions and other adjustments reasonably approved by the Receiver and Plaintiff.

4.7     The Net Proceeds shall be disbursed as follows:

a.     First, to the payment of any unpaid fees and expenses of the Receiver, and a reasonable "holdback" for reasonably anticipated post-closing expenses.
b.     Next, to the repayment of outstanding receivership certificates.
c.     Next, to Plaintiff until the indebtedness secured by Plaintiff's Mortgage has been paid in full (but these amounts shall be on a tentative basis and subject to the rights of any mechanic's lien claimants as provided below in Section 5).
d.     Finally, to the Clerk of the Court to be held pending further order of the Court.

4.8     Provided that Plaintiff's Approval has been given for the sale, and unless otherwise provided in any order of this Court approving a particular sale, any sale shall be free and clear of Plaintiff's Mortgage and all liens, claims, encumbrances, leasehold interests, pledges, mortgages, security interests, and other interests that are junior or subordinated to the Mortgage (collectively, "Liens").  In addition, any sale shall be free and clear of, and shall not be subject to, any right of redemption.  Any Liens shall transfer, affix and attach to the proceeds of the sale with the same force, validity, priority and effect as they may have at the time of the sale.

4.9     Nothing in this Order shall enlarge or restrict the claims and defenses of Plaintiff, other mortgage lien claimants, mechanic's lien claimants, judgment lien claimants and other parties with respect to the Receivership Property.

**5.     Rights of Mechanic's Lien Claimants**

5.1     The rights and priorities of Plaintiff, other mortgage lien claimants, mechanic's lien claimants, judgment lien claimants and all other parties claiming an interest in the

Receivership Property shall be determined in accordance with MCL § 570.1101 et seq. and other applicable law without regard to the provisions of this Order (except that such lien claims, to the extent they are ultimately deemed to be valid and binding under applicable law, shall, in the event of a sale by the Receiver under this Order, attach to the Net Proceeds of the Sale of the Receivership Property as defined above, and not to the Receivership Property itself).

**6.**     **Extent of Receiver's Authority**

6.1     The Receiver is subject to the personal jurisdiction of the Court.

6.2     The Receiver's duty to act as Receiver is subject to the Receiver's written acceptance and approval of the terms of this Order.  Upon acceptance, the Receiver shall faithfully perform and discharge the Receiver's duties under this Order.  The authority granted to Receiver herein is self-executing.

6.3     The Receiver's responsibilities, duties, and liabilities are expressly limited to those stated in this Order, otherwise provided for in the Receivership Act, and that the Court may from time to time authorize.

6.4     Although the Receiver shall have possession and control of the Receivership Property, the Receiver shall not take title to the Receivership Property.

6.5     The Receiver shall not take any action that impedes or interferes with the foreclosure or foreclosure sale process in carrying out the duties contained in this Order. The Receiver is barred from impeding or frustrating the foreclosure or foreclosure sale process.

6.6     The Receiver shall, during the pendency of this action, have the right to apply to and duty as applicable this Court for further instructions or directions.

6.7     The Receiver is authorized to accept advances from the Plaintiff for operating expenses, working capital, or improvements.  The Receiver is further authorized to maintain

working capital in the amount of One Hundred Thousand ($100,000) Dollars.  In the event that the rents, Income, and other revenues collected from the Receivership Property are insufficient to pay the normal, ordinary, and necessary operating expenses of the Receivership Property (including the Receiver's reasonable fees and expenses), Plaintiff shall advance funds to the Receiver to fund such operating expenses. All advances to the Receiver by the Plaintiff for the benefit of the Receivership Property, including any advances for expenses, working capital or improvements, shall be deemed protective future advances under the Loan Documents.  Any such protective future advances shall be fully secured by the Plaintiff's priority liens and security interests against the Receivership Property.  Without derogating from the foregoing, any and all funds advanced by the Plaintiff to the Receiver pursuant to this Order shall: (a) be deemed made pursuant to contract; (b) be added to the amount of the indebtedness owed, jointly and severally, by the Defendant to the Plaintiff; (c) be deemed secured by the liens and security interests in favor of the Plaintiff on the Receivership Property to the same extent and with same priority as the other indebtedness secured by all existing liens and security interests in favor of the Plaintiff; and (d) accrue interest at the highest rate chargeable against the Defendant under the Loan Documents.  All such funds advanced, including interest on advances, shall be deemed a prior lien before the repayment of any and all other claims against the Receivership Property (except for taxes and assessments having first priority as a matter of law) or proceeds of either of them. The Receiver is authorized to issue receivership certificate(s) to secure any such protective future advances by the Plaintiff, but subject to Approval.  Notwithstanding the foregoing, Plaintiff shall have the right to loan funds to the Receiver on terms which are different than the terms of the Loan Documents.  Nothing in this section shall be construed to require Plaintiff to advance or loan funds to the Receiver for any reason.

7.    **Receivership Property and Income**

7.1    "Receivership Property" means and includes:

a.    The Real Estate and Hotel.

b.    All tangible and intangible property used or useable in connection with the operations of the Real Estate including, without limitation, insurance premium refunds, insurance proceeds, condemnation awards, utility deposits and deposits of every other kind related to the property, causes of action, drawings, plans, specifications, escrow agreements, and other personal property described in the Mortgage (the "Personal Property").

c.    All Income.

d.    Any refund or reimbursement of taxes, whether for taxes paid by the Receiver or Defendant, and whether pertaining to any tax period before or after the entry of this Order, and the right to institute or continue any contest, protest, or appeal of any ad valorem tax or assessment, real estate tax, personal property tax, or other tax or assessment pertaining to the Receivership Property.

e.    All fixtures, trade fixtures, and tenant improvements of every kind or nature located in or upon or attached to, or used or intended to be used in connection with the operation of the Real Estate and any buildings, structures or improvements located on the Real Estate (to the full extent of Defendant's interest in such).

f.    All permits, licenses, and contracts pertaining to the Real Estate.

g.    All trade names, trademarks, and intellectual property owned or used by Defendant in connection with the Real Estate.

h.    All books, records, accounts, and documents that in any way relate to the Real Estate, Personal Property or Income.

i.    All other property, estate, right, title, and interest as described in the Loan Documents.

7.2    The term "Income" means, collectively: all cash, cash on hand, checks, cash equivalents, credit card receipts, demand deposit accounts, bank accounts, cash management or other financial accounts, bank or other deposits, and all other cash collateral (all whether now existing or later arising); current and past-due earnings, rents, prepaid rents, revenues, issues and profits, common area maintenance charges, accounts, and accounts receivable (all whether unpaid, accrued, due, or to become due); and all claims to issues, profits, income, cash collateral, and all other gross income derived from the business operations of Defendant related to the Receivership Property; regardless of whether earned before or after entry of this Order.

7.3    Income shall be applied as follows (but subject to Plaintiff's lien rights):

16

a.   First, to the Receiver's approved fees and expenses;

b.   Next, to the current post-receivership operating expenses, including any on-site employee payroll expenses, any real estate taxes, and any other taxes arising from the operations of the Project and for normal business operations incurred during the Receivership, to the extent in the Approved Budget (defined below). The Receiver shall not make disbursements other than permitted under the Approved Budget, except for:

    i.   life-threatening or other health or safety issues,

    ii.   variations on individual line-item(s) not exceeding 10% so long as expenses in the aggregate are within 5% of the Approved Budget on a monthly basis, or

    iii.   upon Plaintiff's Approval;

c.   Next, to the repayment of outstanding receivership certificates;

d.   Next, to Plaintiff until the Loan balance due to Plaintiff is fully paid; and

e.   Finally, any surplus to be held by the Receiver pending further order of the Court.

## 8.   Receiver Compensation, Reports, Accounting, and Bond

8.1   The Receiver's compensation shall be a management fee equal to the greater of (a) 2.5% of the gross revenues of the Hotel, or (b) eight thousand dollars ($8,000.00) per month; plus the Receiver's accounting fee of one thousand dollars ($1,000.00) per month; plus a final receivership fee equal to one month's management fee. The Receiver shall also be entitled to reimbursement of reasonable out-of-pocket expenses.

8.2   The Receiver's compensation shall be paid (1) first from the Income from the Receivership Property and (2) next, by the Plaintiff, but only to the extent that the Income is insufficient to pay the Receiver's compensation. The Receiver shall be permitted to deduct its fees directly from the Income or other proceeds of the Receivership Property, subject to approval in accordance with this Order. The Receiver is authorized to issue receivership certificate(s) to secure any such protective advances by the Plaintiff, but subject to Approval.

8.3   No notice or hearing shall be required before payment of any portion of the Receiver's compensation that is a flat amount for a particular period of time, nor shall it be required for any percentage-based contingent fee (such as a commission) to the extent that all

17

approvals required under this Order have been given for the amount upon which the percentage is calculated. Notice and opportunity for a hearing must be provided for compensation calculated on any other basis (such as an hourly fee), in accordance with this Order.

8.4     The Receiver's compensation as provided above shall automatically terminate at the end of the month during which (1) all or substantially all of the Receivership Property is sold; or (2) the statutory redemption period following foreclosure of the Mortgage expires or is waived by Defendant. Thereafter, Receiver's compensation, if any, shall be subject to Plaintiff's Approval and further order of the Court.

8.5     Nothing in this Order shall require the Receiver to advance funds other than from Income without a bond or security for payment satisfactory to the Receiver.

8.6     Within thirty-five (35) days after the Effective Date, the Receiver shall submit to the Court, for the Court's *in camera* inspection, a list of all of the personal property, whether tangible or intangible, of which it has taken possession.

8.7     By the twentieth (20th) day of each calendar month, the Receiver shall prepare a monthly financial report (the "Receiver's Reports") in a form approved by Plaintiff. Each Receiver's Report shall include, without limitation, an income and expense statement, a balance sheet, and a cash flow analysis pertaining to the operations of the Receivership Property during the immediately preceding month; a copy of the relevant bank statement(s), a summary of advances from Plaintiff, and a leasing, marketing and/or sale update; a description of any other activities of the Receiver since the previous report; and an itemized statement setting forth the compensation paid to the Receiver for the services rendered and costs incurred by it as receiver during the preceding three months, reflecting the dates of service, time spent, and the nature of the services rendered, and costs incurred. Unless any party entitled to receive the Receiver's

Report under this Order files an objection to the Receiver's Report within ten (10) days following service of the Receiver's Report, the compensation set forth in the Receiver's Report shall be deemed approved, subject to the Court's review of all compensation paid to the Receiver in connection with the Court's review and approval of the Receiver's final accounting.

8.8    The Receiver shall submit the Receiver's Reports to the Court for the Court's *in camera* inspection and to all counsel of record and other representatives designated by the parties. The Receiver's Reports are not to be filed with the Clerk at the Court and shall not be available for public inspection without a specific order of the Court.

8.9    The Receiver shall further prepare a proposed operating budget and capital budget for the current calendar year for the Receivership Property (the "Budget") within sixty (60) days after the Effective Date, and thereafter each December 1 for the succeeding year.  The Budget will be submitted to and reviewed by the parties, and is subject to Plaintiff's Approval.  The Budget, as approved, shall be the "Approved Budget."

8.10   The Receiver shall post a surety bond from an insurance company licensed to do business in this State in an amount not less than Twenty Five Thousand Dollars ($25,000.00), effective as of the Effective Date. The Receiver is authorized to act before it posts this bond. The cost of the bond is an expense of the Receivership.

9.    **Confidentiality**

9.1    "Confidential Information" means the Receiver's Reports and any other nonpublic information.

9.2    The parties to this action, their counsel, and all others who receive actual notice of this Order shall keep all Confidential Information provided by the Receiver confidential, and all such persons are prohibited from disclosing any Confidential Information to anyone other than

the parties to this action and their counsel without specific order of this Court, except that (1) Plaintiff and its attorneys and agents may provide potential purchasers, consultants, and any other appropriate persons with information useful for the marketing, leasing, selling, or management of the Receivership Property; and (2) Plaintiff and its attorneys and agents may provide Plaintiff's assignor and its master servicer, special servicer, any subservicer, trustee, and any trust certificate holder with any information required in the normal course of business of real estate mortgage investment conduit trusts.

10.   **Approval**

10.1   "Plaintiff's Approval" means written consent by Plaintiff. and notice to defendant.

10.2   "Court Approval" means approval by a specific Order of the Court.

10.3   "Approval" when appearing without a modifier means either Plaintiff's Approval or Court Approval.

11.   **Term and Final Accounting**

11.1   This Receivership shall continue until further order of the Court.

11.2   The Receiver shall be removed automatically and without cause thirty (30) days after the filing of a written demand for removal signed by Plaintiff's counsel and filed with the Clerk of the Court; this removal shall be self-executing and have immediate effect upon filing with the Clerk without further order of the Court. The Receiver may also be removed in the Court's equitable discretion upon a motion for cause filed by Defendant. If the Receiver is removed for any reason, a successor receiver shall be appointed upon the submission of a stipulated order on behalf of Plaintiff and Defendant.  In the absence of such stipulation, this Court will name a successor receiver by further order after a motion is filed by Plaintiff or Defendant requesting the appointment of a successor receiver.

11.3   The Receiver may seek instructions and additional authority from the Court upon written notice to Plaintiff and Defendant and may at any time file a motion seeking an order from this Court requesting that it be exonerated, discharged and released from its appointment as Receiver.

11.4   Immediately upon termination of the Receivership, the Receiver shall turn over to Plaintiff or its designee (including any property manager), all of the Receivership Property, unless otherwise ordered by the Court.  The Receiver shall be entitled to retain sufficient funds needed to pay final bills and expenses, and shall pay such bills in connection with the termination of the receivership.   In the event there are insufficient funds, Plaintiff shall fund such amounts to the Receiver.

11.5   Neither the termination of the Receivership nor the Receiver's removal will discharge the Receiver or the Receiver's bond.

11.6   The Receiver shall submit a final accounting to this Court and the parties (with copies to the parties) for approval by the Court within forty-five (45) days after the termination of the Receivership or the Receiver's removal.

11.7   The Receiver shall be discharged and its bond cancelled only after this approves the Receiver's final accounting.

12.   **General Provisions**

12.1   No person or entity shall file suit against the Receiver, or its employees, agents, or attorneys, or take other action against the Receiver or the Receiver's bond, without first obtaining an order of this Court; provided, however, that no prior court order is required to file a motion in this action to enforce the provisions of this Order.

12.2    The Receiver and its employees, agents, and attorneys shall have no personal liability in connection with any liabilities, obligations, liens, citations, code violations, or amounts owed to any of Defendant's creditors, taxing authorities, bodies politic, or other claimants because of its duties as Receiver, whether arising before or after the Receiver's appointment. The Receiver and Receiver's employees, agents, and attorneys shall have no personal liability with respect to any environmental liabilities arising out of or relating to the Receivership Property.

12.3    The Receiver shall not be obligated to advance funds and the Receiver's liability is limited to the assets of the receivership.  The Receiver and its employees, agents, and attorneys shall have no personal liability and they shall have no claim asserted against them relating to the Receiver's duties under this Order, except for claims due to their gross negligence, gross or willful misconduct, malicious acts, or the failure to comply with this Court's orders.  All costs associated with any and all claims brought against the Receiver, except in the event of gross negligence or willful misconduct, shall be an operating expense, including but not limited to, insurance premiums, deductibles, retentions, costs, expenses, attorneys' fees and settlements.

12.4    The Receiver and the Receivership Property shall not be liable for the payment of goods or services provided to Defendant prior to the date of this Order.  Any individual or entity receiving a copy of this Order is hereby enjoined and restrained from discontinuing service to the Receiver or the Receivership Property based upon non-payment of such goods or services prior to the date of this Order and from attempting to collect taxes, assessments, and invoices from the Receiver pre-dating the date of this Order.  Notwithstanding, the Receiver is authorized to pay any and all outstanding utility expense and other lien obligations, and any and all other outstanding obligations to suppliers incurred in arms' length transactions who prior to the entry

of this order supplied materials, business supplies and/or labor to or for the benefit of the Receivership Property as it deems in its discretion to be advisable to maintain the business relationships with such suppliers for the benefit of the preservation of the Receivership Property and upon Plaintiff's Approval.

12.5    Nothing in this Order shall grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely determined in accordance with Michigan law.

12.6    No Register of Deeds shall require the imposition of any transfer tax on any written instrument conveying or transferring property or an interest in property to the Receiver, as provided in MCL 207.506 and MCL 207.527, as amended.

12.7    In accordance with MCL 554.1024, Defendant and its agents, along with all those having claims against the Receivership Property who receive notice of this Order, are enjoined from and shall not:

a.    Commit or permit any waste on all or any part of the Receivership Property, or suffer or commit or permit any act on all or any part of the Receivership Property in violation of law, or remove, transfer, encumber, or otherwise dispose of any of the Receivership Property.

b.    Demand, collect, receive, discount, divert or use any of the Income.

c.    Terminate, discontinue or withhold any electric, gas, water, sewer, telephone, or other utility service supplying the Receivership Property, require any utility deposit (including demanding the deposit of additional funds to maintain or secure service), do other than transfer any deposits relating to utility or other services to the exclusive control of the Receiver, or otherwise interfere with the continued operations of the Receivership Property.

d.    Directly or indirectly interfere in any manner with the discharge of the Receiver's duties under this Order or the Receiver's possession of and operation or management of the Receivership Property.

e.    Expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in, encumber, conceal, or in any manner whatsoever deal in or dispose of the whole or any part of the Receivership Property including, but not limited to, the Income, without prior court order.

f.    Do any act that will, or that will tend to, impair, defeat, divert, prevent, or prejudice (i) the preservation of the Receivership Property, including the Income, or (ii) Plaintiff's interest in the Receivership Property and the Income, or the preservation of that Interest.

23

**13.**     **No Prejudice to Foreclosure**

13.1 This Order shall not prejudice Plaintiff's foreclosure of the Mortgage, either judicially or by advertisement, or an action by Plaintiff under any security agreement or the Uniform Commercial Code with respect to the Personal Property, or any of Plaintiff's other claims as set forth in any amendments to the Complaint. The Receiver shall not take any action that impedes or interferes with the foreclosure or foreclosure sale process in carrying out the duties contained in this Order. The Receiver is barred from impeding or frustrating the foreclosure or foreclosure sale process.

**14.**     **Amendment of Order**

14.1 This Order may be amended for cause after a motion or hearing. This Order may also be amended by order agreed to by Plaintiff, Defendant and the Receiver.

Date: _____        /s/ Brian R. Sullivan    2/5/2021
_____

                                      Circuit Court Judge

## ACCEPTANCE OF RECEIVERSHIP

DMMI Associates LLC, by and through Jeffrey Kolessar, accepts the duties of the

Receiver as set forth in this Order and agrees to submit to the personal jurisdiction of this Court.

By: _____

Its: _____

Dated: _____, 2021

## EXHIBIT "A"

## LEGAL DESCRIPTION

Real property in the City of Romulus, County of Wayne, State of Michigan, described as follows:

A parcel of land located in the Southeast 1/4 of Section 10, Town 3 South, Range 9 East, City of Romulus, Wayne County, Michigan, more particularly described as:

Beginning at a point on the South line of said Section 10 and centerline of Wick Road (66.00 feet wide), distant North 89° 40' 30" West, 60.00 feet from the Southeast corner of Section 10; proceeding thence North 89° 40' 30" West, 691.00 feet along the South line of Section 10 and centerline of Wick Road;
thence North 00° 31' 30" West, 639.36 feet;
thence South 89° 44' 55" East, 691.00 feet;
thence South 00° 31' 30" East, 640.25 feet along the West line of Wickham Road (93.00 feet wide) to the Point of Beginning.

Excepting therefrom: A parcel of land located in the Southeast 1/4 of Section 10, Town 3 South, Range 9 East, City of Romulus, Wayne County, Michigan, more particularly described as:

Beginning at a point on the South line of said Section 10, distant North 89° 40' 30" West, 687.00 feet from the Southeast corner of Section 10;
thence North 89° 40' 30" West, 64.00 feet along the South line of Section 10;
thence North 00° 31' 30" West, 350.01 feet;
thence South 89° 42' 01" East, 64.01 feet;
thence South 00° 31' 30" East, 350.04 feet to the Point of Beginning.

For Informational Purposes Only: Tax ID 80-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-701